# In the United States Court of Federal Claims

No. 24-1238
(Filed Under Seal: July 31, 2025)
Reissued: August 7, 2025[1]

|  |  |
|---|---|
| THE DAVINCI COMPANY, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Jason Nicholas Workmaster*, Miller & Chevalier Chartered, Washington, D.C., for plaintiff.

*Kyle Shane Beckrich*, U.S. Department of Justice, Civil Division, Washington, D.C., for defendant.

**OPINION & ORDER**

**SMITH**, Senior Judge

  This case concerns the Department of Veterans Affairs' ("VA") decision to disregard a crucial provision of the Trade Agreements Act ("TAA") when it chose to procure Tamsulosin, a drug that treats a prostate condition. The VA awarded the contract, before and after corrective action on the procurement, to two different companies, whose Tamsulosin comes from India, a non-TAA country. In contrast, the DaVinci Company LLC ("The DaVinci Company") offered to procure Tamsulosin from Spain, a TAA compliant country.

  The VA's decision prejudiced The DaVinci Company because the organization followed the rules and lost a valuable economic opportunity. *Acetris Health, LLC v. United States*, 949 F.3d 719, 723 (Fed. Cir. 2020) (describing the TAA's requirements). In response, defendant, the United States of America, claims the VA's decision based on the view that the TAA's obligations can be excluded when the Buy American Act ("BAA") is invoked. 41 U.S.C. § 8302 (a)(1). The VA categorized this procurement as a BAA small business set-aside, thereby, as defendant claims, nullifying the TAA's

---

[1]   An unredacted version of this opinion was issued under seal on July 31, 2025. The parties were given an opportunity to propose redactions, and none were requested.

obligations. 48 C.F.R. § 25.101(b).

Essentially, defendant's argument has three stages. First, this categorization permits the VA to disregard the TAA's requirements when there is no readily available domestic supply of the drug. Consequently, the VA may use any procurement source that normally would be excluded by the TAA. Second, the VA believes two waivers—the nonmanufacturing and the nonavailability waivers—nullifies the TAA's requirements. Third, the BAA allows the government to completely ignore the TAA's limits.

But defendant's argument misses the point. The fact that Tamsulosin is insufficiently produced domestically, and the aforementioned waivers allow agencies to procure international pharmaceuticals under the BAA *does not* permit the VA to avoid the TAA's statutory requirements.

# I

On July 1, 2024, the VA issued Solicitation No. 36C77024Q0292 (the "Solicitation") to purchase Tamsulosin as a small business set-aside. *See* Administrative Record at 56, 67 (Tab 7a), ECF No. 29 [hereinafter AR]. The VA did so after conducting a required 'Rule of Two' analysis, in which the VA determined that fourteen manufacturers and/or suppliers of Tamsulosin exist. *Id.* at 12–14 (Tab 4); *see also PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1357 (Fed. Cir. 2018) ("The Supreme Court [has] held that . . . [38 U.S.C.] § 8127(d) 'unambiguously requires the [VA] to use the Rule of Two before contracting under the competitive procedures.'") (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016)). But none of the fourteen are domestic small businesses manufactures; there are only domestic resellers. AR at 14 (Tab 4). So, on June 25, 2024, prior to issuing the Solicitation, the VA requested and then received a nonmanufacturing waiver from the SBA, thereby allowing the VA, under 13 C.F.R. § 121.406(b)(7), to use a domestic reseller of foreign-origin Tamsulosin "without regard to the place of manufacture." *Id.* at 3–4 (Tab 2); *id.* at 5–7 (Tab 3). In issuing this waiver, the SBA found that the VA provided "sufficient evidence demonstrating that there are no domestic manufacture[r]s . . . and therefore no small business manufacture[r]s . . . as well." *Id.* at 6 (Tab 3). Instead, the SBA determined that any domestic reseller would be sufficient to meet the 'Rule of Two' domestic-origin requirement. *Id.* at 3–4 (Tab 2). Based on these parameters, the Solicitation was issued the following month as a small business set-aside subject to the BAA, but not the TAA. *Id.* at 53 (Tab 7).

The VA received eight proposals to its Solicitation, including one from plaintiff, The DaVinci Company, submitted on July 8, 2024, offering to provide Tamsulosin from Spain, a TAA-designated country. *Id.* at 561–62 (Tab 18). After submitting its proposal, The DaVinci Company filed an agency protest wherein it argued, as it does here, that the VA should apply the TAA instead of the BAA to its procurement. *Id.* at 616–24 (Tab 23). On July 19, 2024, the VA dismissed in part and denied in part this protest based on how the agency viewed its 'Rule of Two' requirements. *Id.* at 699–

700.  However, it failed to explain why the BAA applied over the TAA when no domestic manufacturers of Tamsulosin are available.  *See* Plaintiff's Motion for Judgment on the Administrative Record at 7–8, ECF No. 32 [hereinafter Pl.'s Mot.].

On July 23, 2024, the VA found Wood International LLC's offer to be the best value to the government; that offer procures Tamsulosin from India, a non-TAA-designated country.  *See* AR at 561–65 (Tab 18).  On July 26, 2024, the VA submitted a BAA nonavailability waiver—essentially a waiver of domestic preference—to the SBA's Made in America Office because the VA needed to procure Tamsulosin from a foreign country, given, according to the VA, that "[a]ll quotes received in response to the [S]olicitation were for pharmaceuticals manufactured in India."  *Id.* at 605–09 (Tab 20); *id.* at 562 (Tab 18).  The DaVinci Company stressed this inaccuracy (among others) provided by the VA to the SBA's Made in America Office.  *See* Pl.'s Mot. at 10.  But in an August 2, 2024, letter the Made in America Office made clear that it was unwilling to address The DaVinci Company's issues unless plaintiff abandoned its pre-award protest.  *See* AR at 612 (Tab 22).  On August 7, 2024, the Made in America Office approved the VA's nonavailability waiver.  *See* Defendant's Cross-Motion for Judgment on the Administrative Record at 15, 17, ECF No. 37 [hereinafter Def.'s Mot.].

## II

On August 13, 2024, The DaVinci Company filed its complaint in this Court alleging four claims against the VA.  *See generally* Complaint, ECF No. 1 [hereinafter Compl.].  First, the VA incorrectly applied the BAA to the Solicitation.  *Id.* at 17–23.  Second, the VA failed to apply the TAA to the Solicitation.  *Id.*  Third, the VA submitted misleading information to the Made in America Office when requesting a nonavailability waiver.  *Id.*  Fourth, the VA failed to apply the correct evaluation criteria to the eight Solicitation proposals.  *Id.*

On August 27, 2024, defendant informed the Court of its intention to take corrective action in this case, and requested the Court stay the matter until the VA finished its process.  *See generally* Defendant's Motion to Stay Deadlines and Notice of Corrective Action, ECF No. 14.  After a status conference the following day, the Court granted this stay—and the VA began to undertake its corrective action on the Solicitation.  *See generally* Order Staying Case, ECF No. 16.  On September 25, 2024, the VA reissued the Solicitation and sought new proposals. Def.'s Mot. at 6–7, 10.  The VA once again received eight Solicitation proposals.  *Id.* And, like previously, The DaVinci Company offered Tamsulosin from Spain, whereas the other seven proposals all offered Tamsulosin from India.  Pl.'s Mot. at 11. The DaVinci Company lost the contract to another offeror for a second time.  *Id.*  This time, the VA found Nationwide Pharmaceutical, LLC to have the lowest priced, technically acceptable offer, whose Tamsulosin comes from India, like the previous winner, Wood International LLC.  Def.'s Mot. at 7.

On November 26, 2024, defendant moved both to set a schedule for judgment on the administrative record and, on behalf of The DaVinci Company, to dismiss the third

3

and fourth counts of the complaint.  *See generally* Defendant's Joint Motion to Amend the Scheduling Order and to Dismiss Counts III and IV, ECF No. 19.  On December 2, 2024, the Court granted this motion:  Only the first two counts—regarding whether either the BAA or the TAA applied to the Solicitation—would be reviewed by the Court.  *See generally* Order of Dismissal, ECF No. 20; Scheduling Order, ECF No. 21.

On January 14, 2025, defendant filed the administrative record.  *See generally* AR.  On January 24, 2025, the DaVinci Company filed its Motion for Judgment on the Administrative Record.  *See generally* Pl.'s Mot.  On February 28, 2025, defendant filed its Cross-Motion for Judgment on the Administrative Record.  *See generally* Def.'s Mot.  On March 28, 2025, the DaVinci Company filed its Response in Opposition to Defendant's Motion for Judgment on the Administrative Record and Reply in Support of its Motion for Judgment on the Administrative Record.  *See generally* Plaintiff's Response in Opposition to Defendant's Motion for Judgment on the Administrative Record and Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 41 [hereinafter Pl.'s Resp.].  On April 18, 2025, defendant filed its Reply in Support of its Cross-Motion for Judgment on the Administrative Record.  *See generally* Defendant's Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 45 [hereinafter Def.'s Reply].  On May 8, 2025, the Court held oral argument on the cross-motions.

### III

The Tucker Act grants this Court jurisdiction over bid protests.  *See* 28 U.S.C. § 1491(b)(1).  Government procurement decisions can be set aside if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); 28 U.S.C. § 1491(b)(4).  To prevail, the protestor must show either that "the procurement official's decision lacked a rational basis . . . or [that] the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (cleaned up).  At issue is whether the VA violated a regulation or procedure by not applying the TAA to its Tamsulosin procurement.

When considering a motion for judgment on the administrative record, the Court determines whether a party has met its burden of proof based on the evidence contained in the record.  *See XOtech, LLC v. United States*, 950 F.3d 1376, 1379–80 (Fed. Cir. 2020).  The protestor must show that the alleged violation of regulation or procedure is "clear and prejudicial."  *Impresa Construzioni Geom. Domenico Garufi*, 238 F.3d at 1333.  That said, Courts must "exercise their independent judgment in deciding whether an agency has acted within its statutory" or regulatory authority and, therefore, "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

If an agency violation of statue or regulation is found, the Court may issue a permanent injunction if a protestor establishes prejudice by showing "that there was a 'substantial chance' it would have received the contract award but for the alleged error

4

in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

## IV

The parties present their conflict as an either/or dispute. To them, either the TAA or the BAA applies to the Solicitation. If the TAA applies, The DaVinci Company wins, whereas, if the BAA applies, defendant wins. *Compare generally* Pl.'s Mot. *with* Def.'s Mot. But this proffered dispute is too binary—because both the TAA and the BAA, at certain points, could be applied to the Solicitation—and, consequently, the parties miss the real dispute: Under what conditions does the TAA apply *after* the VA previously invoked the BAA?

This question is complex because the VA chose to fulfill its needs by selecting Tamsulosin from a reseller of an international pharmaceutical manufacturer. *See* AR at 561–65 (Tab 18). After all, as the government describes, the BAA traditionally controls domestic procurements and small business issues. The TAA traditionally applies to international procurements. Therefore, this case, properly understood, is an order of operations dispute. Or, put differently, the statutory regime—the TAA versus the BAA—that takes precedent depends on which steps the VA took before issuing its procurement decision. The Court turns to this inquiry.

### A

Evaluating agency decisions for compliance to Congress's command is the purpose of government contract jurisprudence. *See generally, e.g.*, *Anders Constr., Inc. v. United States*, 171 Fed. Cl. 300 (2024) (holding that an agency's procurement decisions violated certain statutory and agency-level regulations). Accordingly, this case's analysis depends on comparing the VA's actions with Congress's stated statutory obligations. *See Telesto Grp., LLC v. United States*, No. 24-1784, 2025 WL 1551279, at *7 (Fed. Cl. June 2, 2025) ("A reviewing court may not substitute its judgment for that of the agency; instead, a court evaluates the basis for the agency's decision to determine if it is reasonable, supported by the record before the agency, and consistent with the law." (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Court holds that the VA improperly disregarded the TAA's obligations when awarding the Solicitation's contract.

Most of the VA's actions were proper. The VA acted within its discretion to conduct its 'Rule of Two' analysis, to receive a nonmanufacturing waiver from the SBA, and to evaluate the eight received offers to its Solicitation for the best value to the government. *See* AR at 3–4 (Tab 2); *id.* at 5–7 (Tab 3); *id.* at 12–14 (Tab 4); *id.* at 561–65 (Tab 18). Everything was satisfactory until the VA's next step—requesting a nonavailability waiver from the SBA's Made in America Office—caused this kerfuffle. *Id.* at 605–09 (Tab 20); *id.* at 562 (Tab 18).

To be sure, the nonavailability waiver request was not itself an abuse of discretion; agencies can fulfill their respective needs if there is a "reasonable basis" for its procurement actions, *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)), and requesting waivers when necessary is "entitled to a 'presumption of regularity,'" *Melwood Horticultural Training Ctr., Inc. v. United States*, 151 Fed. Cl. 297, 304 (2020) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). But a problem arises when the VA's "procurement procedure involved a violation of regulation or procedure" when implementing a waiver. *Impresa Construzioni Geom. Domenico Garufi*, 238 F.3d at 1332.

Our present question is how the VA implemented its nonavailability waiver, meaning the Court can no longer "stay its hand" after recognizing the agency's statutory application issue. *Honeywell, Inc.*, 870 F.2d at 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co.*, 455 F.2d at 1301). Specifically, the agency ignored the TAA's obligations, despite the procurement becoming dependent on international, instead of domestic, products to fulfill the VA's needs. AR at 605–09 (Tab 20); *id.* at 562 (Tab 18). The VA, in other words, treated its Solicitation as still being a BAA set-aside when it had voluntarily—based on nonavailability—waived the BAA's protections to trade with a foreign company.

The TAA "is designed to discourage discrimination against foreign suppliers," S. Rep. No. 96-249, at 129 (1979); *see also* 19 U.S.C. § 2511(a), by encouraging countries to enter into reciprocal procurement trade agreements that "prohibit foreign countries from discriminating against American-made products and prohibit the United States from discriminating against foreign-origin products," *Acetris Health, LLC*, 949 F.3d at 723. Comparatively, the BAA is designed to limit agency procurement to domestic suppliers, unless the agency's need cannot be fulfilled by either domestic manufacturers or some other reason needed to promote the public interest. *See* 41 U.S.C. § 8302 (a)(1). Both the TAA and the BAA, therefore, seek to protect American trading interests along a similar purpose—both protect American manufacturers from unfair international industries. *E.g.*, *id.* (defining the BAA's purpose); 19 U.S.C.A. § 2502 (defining the TAA's purpose "expand[ing] opportunities for" United States commerce internationally). Fair trade, in short, is the statutes' shared goal. *See S.J. Amoroso Const. Co. v. United States*, 26 Cl.Ct. 759, 766 (1992), *aff'd*, 12 F.3d 1072 (Fed. Cir. 1993) ("[N]either the parties nor this court are free to disregard those policies.") (citing *Sprague S.S. Co. v. United States*, 145 Ct.Cl. 642, 646 (1959) (reasoning that "a court, in the application of a statute[,] cannot evade the task of ascertaining as best it can, and then giving effect to, the Congressional purpose.")).

To defendant, the statutory comparison analysis—whether the TAA applies or does not apply to the Solicitation—ends once an agency categorizes a procurement as a small business set-aside. *See generally* Def.'s Mot.; Def.'s Reply. Nothing that occurs afterwards—the nonmanufacturer and nonavailability waivers—changes that point.

6

Defendant's argument misses the point because The DaVinci Company is not disputing that the Solicitation was categorized as a small business set-aside, but rather is disputing whether the TAA's protections still apply. *See generally* Pl.'s Mot. More importantly, neither the legislative history nor caselaw defendant relies upon supports its position; its evidence, in fact, supports The DaVinci Company's claim.

To start, defendant presumes that, after a BAA nonmanufacturer waiver is issued under 19 U.S.C. § 2511(f), the Federal Acquisition Regulation, or FAR, allows the VA to procure Tamsulosin without complying with the TAA because FAR 25.401(a)(1) interprets § 2511(f) to bar application of the TAA "to . . . acquisitions set aside for small businesses." Def.'s Mot. 12–13.

The Court's "role is to interpret the language of the statute enacted by Congress," *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 441 (2002), and must reject administrative constructions which are contrary to clear congressional intent, *Loper Bright Enters.*, 603 U.S. at 386–87. We thus review the statutory text without being bound by the VA's interpretation. *Loper Bright Enters*, 603 U.S. at 412–13.

§ 2511(f) states that the TAA "does not authorize the waiver of any small business or minority preference." This command means, according to the legislative history, that an agency cannot use the TAA to waive any small business or minority preference. *See Blackhawk Indus. Prods. Grp. Unlimited, LLC. v. U.S. Gen. Servs. Admin.*, 348 F. Supp. 2d 649, 653 (E.D. Va. 2004) (discussing § 2511(f)'s legislative history). The language neither allows an agency to avoid TAA requirements altogether nor does FAR 25.401(a)(1) enlarge this statutory command. Instead, FAR 25.401(a)(1), as it must, reaffirms that the TAA cannot waive—meaning the TAA cannot nullify—the BAA's requirements *when* there is a domestic small business producer.

This case is the exact opposite: there is no domestic producer, and the VA has obtained a waiver that allows procurement from any source regardless of origin, thereby stripping the Solicitation of the BAA's domestic protections. *See* AR at 561–65 (Tab 18). The TAA—as a statute controlling international procurement preferences—must then apply when domestic preferences have been waived to achieve "the obvious statutorily articulated purpose of the statute" that seeks to encourage fair international trade. *Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 776 (7th Cir. 2024).

The Court observes that § 2511(f) applies to the nonmanufacturing waiver, not the nonavailability waiver. Rules controlling the nonmanufacturer waiver matter because that waiver allowed the VA to review nondomestic offers, *see* 13 C.F.R. § 121.406(b)(1), whereas the nonavailability waiver allowed the VA to procure Tamsulosin from its chosen nondomestic offer, *see* Exec. Order. No. 14005, 86 Fed. Reg. 7475, 7475–76 (Jan. 25, 2021). Knowing what the nonmanufacturer waiver allows guides our understanding of what can be procured with a nonavailability waiver. A nonavailability waiver, however, does not overrule the TAA.

The VA's process went off-course with its implementation of the nonavailability waiver. Based on its reading of § 2511(f) that the TAA is unapplicable to the Solicitation, the VA (twice) decided to award the contract to a supplier of Indian manufactured Tamsulosin after the Made in America Office granted a nonavailability waiver. *See* Def.'s Mot. at 7; AR at 561–65 (Tab 18). But § 2511(f) does not offer the protections the government seeks; § 2511(f) does not nullify the TAA. § 2511(f) only prohibits using the TAA as the reason for ignoring the BAA's protections. *Blackhawk Indus. Prods. Grp. Unlimited, LLC.*, 348 F. Supp. 2d at 653; *see* 19 U.S.C. § 2511(f) ("The authority of the President under subsection (a) of this section to waive any law, regulation, procedure, or practice regarding Government procurement *does not authorize the waiver* of any small business or minority preference." (emphasis added)). The TAA is still good law, still applies to internationally focused agency decisions, such as this Solicitation, until Congress proclaims otherwise. *United States v. Borden Co.*, 308 U.S. 188, 198 (1939) ("It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible."). That being so, the TAA bars procurements from India, meaning the VA should never have awarded the contract to a supplier of Indian Tamsulosin. *Acetris Health, LLC*, 949 F.3d at 723–24 ("India, notably, is not a party to the [TAA]. Thus, the TAA bars procurement of products of India." (internal quotation marks and footnote omitted)).

Defendant's caselaw does not contradict this outcome. All its cited decisions, both at an agency and at a federal court, concern whether the TAA should have been implemented when a nonmanufacturer waiver was issued; nonavailability waivers were never discussed. *See generally, e.g.*, *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 880 F. Supp. 2d 36, 46 (D.D.C. 2012), *aff'd*, 764 F.3d 19 (D.C. Cir. 2014); *Veterans Healthcare Supply Sols., Inc.*, B-418038, 2019 WL 7187255 (Comp. Gen. Dec. 23, 2019); *Becton, Dickinson, and Co.*, B-417854, 2019 WL 6112847 (Comp. Gen. Nov. 15, 2019). Given this case concerns a nonavailability waiver's implementation, the Court is not persuaded that caselaw concerning nonmanufacturer waivers should be informative; those cases only inform nonmanufacturer waiver cases.

\* \* \*

The VA decided to set aside the procurement under the BAA *after* both receiving a nonmanufacturer waiver and believing the TAA would not apply under this scheme due to § 2511(f). AR at 3–4 (Tab 2); *id.* at 5–7 (Tab 3); *id.* at 53 (Tab 7); *but see Acetris Health, LLC*, 949 F.3d at 723–24 (illustrating that the VA's Indian procurements are not permissible due to the TAA). That action was wrong. The VA, as much as Courts, must abide by Congress's stated demands. *United States v. Great N. Ry. Co.*, 343 U.S. 562, 575 (1952) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written."). If there is a reason to repeal statutory obligations, in the words of the late Judge Allegra, "it is, of course, for Congress . . . to adopt the necessary change." *Kennedy v. Sec'y of Health & Hum. Servs.*, 99 Fed. Cl. 535, 542 n.8 (2011), *aff'd*, 485 F. App'x 435 (Fed. Cir. 2012).

8

By knowingly procuring Tamsulosin from an international supplier while choosing to ignore international procurement rules, like the TAA, the VA did not follow Congress's statuary aims. The TAA's goals remain active until Congress decides the mischief is no more. No agency can—or, frankly, should—administratively repeal Congress's word. Allowing an agency to ignore these words undermines those values. The Court's injunctive powers must act as a result.

B

The DaVinci Company seeks permanent injunctive relief. *See generally* Compl. at 24–28. By satisfying the below requirements, The DaVinci Company has earned this relief. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228–32 (Fed. Cir. 2004) (outlining the requirements for injunctive relief). And, crucially, injunctive relief is justified because The DaVinci Company, being the only TAA-compliant offeror, has a "'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp.*, 316 F.3d at 1319.

**Requirement One: Succeeding on the Merits**. The DaVinci Company has succeeded on the merits, thus satisfying this requirement. *See PGBA, LLC*, 389 F.3d at 1228.

**Requirement Two: Irreparable Harm.** The DaVinci Company has suffered irreparable harm because it was "deprived of the opportunity to compete fairly for a contract," when the VA—in direct violation of the TAA—chose to award its contract to an offeror supplying Tamsulosin from India, a non-TAA-compliant country. *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 494 (2013) (collecting cases).

The VA is "generally prohibit[ed]" from procuring foreign pharmaceuticals unless the procurement awardee supplying "country is a party to the" TAA. *Acetris Health, LLC*, 949 F.3d at 723–24. "India, notably, is not a party to the [TAA]." *Id.* "Thus, the TAA bars procurement of products of India." *Id.* (internal quotation marks and footnote omitted).

The DaVinci Company, as the only TAA-complaint offeror, *see* AR at 561–62 (Tab 18), was "deprived of the opportunity to compete fairly for" the VA's contract, *CW Gov't Travel, Inc.*, 110 Fed. Cl. at 494, when the VA chose to improperly "discriminat[e] against" TAA-compliant pharmaceuticals in favor of non-compliant pharmaceuticals, *Acetris Health, LLC*, 949 F.3d at 723. In doing so, the VA violated the TAA's stated aim "to encourage foreign countries to enter reciprocal government-procurement trade agreements" for the opportunity to compete for American government contracts. *Id.*

Few more serious and irreparable competitive harms exist than the VA penalizing the only TAA-compliant offeror by awarding a contract to a non-compliant offeror supplying Tamsulosin from a "barred" country, India in this case. *Id.*; *see also AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 378–79 (2009) (reasoning that "a lost

opportunity to compete on a level playing field has been found sufficient to constitute irreparable harm").

**Requirements Three and Four: Balance of the Hardships and the Public Interest.** The DaVinci Company's harm and the public interest outweighs any resulting government inconvenience because "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *GEO Group, Inc. v. United States*, 100 Fed. Cl. 223, 229–30 (2011) (internal quotation marks and citation omitted). An abuse of discretion occurred when the VA did not apply the TAA's obligations to the Solicitation. Accordingly, "[h]ere, the public's interest in ensuring the integrity and fairness of the procurement process outweighs the public's interest in permitting the VA to conduct its source selection with prejudicial errors and evidence of unequal treatment of the offerors." *Progressive Indus., Inc. v. United States*, 129 Fed. Cl. 457, 486 (2016).

On review of the four requirements, a permanent injunction is favored: The VA is to redo the Solicitation with the TAA's obligations applied when awarding the contract. *Id.* Any other solution would perpetuate an economic injury.

**V**

The TAA applies to all procurements except for when a BAA domestic preference is invoked. If once an agency later waives its BAA invocation, like the VA did here, the TAA's obligations reassert themselves onto the procurement. Consequently, the TAA should have procured Tamsulosin from a TAA compliant country. As the VA did not, it must redo its procurement.

The DaVinci Company's Motion for Judgment on the Administrative Record, ECF No. 32, is **GRANTED**, and its Motion for Temporary Restraining Order, ECF No. 2, is **FOUND AS MOOT**. Defendant's Cross-Motion for Judgment on the Administrative Record, ECF No. 37, is **DENIED**. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

10